Good morning your honors, Michelle Anderson on behalf of Mr. Alivio. The main issue on appeal stems from the large body of prejudicial gambling evidence which was admitted at trial against Mr. Alivio. Now the government argues that this evidence was not prejudicial and that even if it was the error was harmless and neither argument I think is compelling based on this being a gambler is not prejudicial because it's not bad character evidence that gambling is legal in Nevada it's a leisure activity engaged in by many and I just think that that simply isn't true it's well those facts are true but it is an inflammatory label to a lot of people and when we look at talking about the gambling evidence now that's where you are well isn't it an abuse of standard of review for the district court yes it is your honor and in the court gives some very limiting instructions as to the questions and as to the jury's ability to even consider this evidence no your honor there's something that the government sort of characterizes as a curative and I think what your honor is referring to is the curative what is characterized as a 33 through 34 right and what the judge said during the testimony of the debt collector at the Venetian he stopped the testimony for a moment he said ladies and gentlemen we're talking about gambling winning and losing through gambling this wasn't a true curative though your honor it sort of worsened the situation it focused the case on gambling and didn't give the jurors the parameters of how it was to consider this evidence in the context of this case it just asked the jurors if they understood that it was legal stated some people have some hang-ups but they should understand that it's legal so I don't believe that that limiting instruction if you want to characterize it as that I have to look at what the court did it seemed to me the court was trying to say this can be admitted for some purpose but not for other purpose which I worry was that that I'm not sure it was limiting but that's the argument Judge Smith I agree that that a true curative would have done that it would have set out parameters for the jurors and how they were supposed to consider this evidence but that's not what it did this curative actually says look we're talking about gambling here everybody understands that it's legal I and I don't think that establishes the parameters in which the jurors were speaking to me in looking at the transcript that the district court was was he not of the potential prejudice trying to avoid going over the line I agree that the judge in this case was was looking to limit the damage of this evidence but I don't think that he did so successfully it was sort of a day late and a dollar short because when we look at the evidence holistically it's a gambler horribles in this case the government went so far as to actually call mr. Alivio a gambler through its witness miss Lee moan it's tax procurement the tax preparer in this case and that's found a year 138 it went so far as to characterize him I didn't call him a deadbeat gambler but might as well have because he was a person who lived an extravagant lifestyle a comfortable lifestyle that's found in the government's closing argument at er 381 and er 414 he was characterized as an irresponsible gambler who borrowed thousands of dollars to gamble and didn't pay it back when he should have are you is your argument that his gambling activities would never should never have been but put before the jury at all well I don't think they would have never known but for these witnesses that on the testimony you're challenging that he had actually was a high roller in Las Vegas well I think in the context of this case it didn't have any relevance that's not my question in other words you your position is that any reference in any form to his being a gambler was irrelevant and nothing about the jury should not have known that he had any gambling activities in the context of this case yes I believe that's true that's all I wanted to find out the fact that the representations were not a mistake or an accident well I think the evidence go to that no I don't see how the evidence of an unpaid gambling debt in Vegas but the gambling evidence as it is I'm not talking about one specific point of the evidence but you just said to judge Fisher you didn't think it was at all relevant I guess I'm trying to figure out the district court now I have to give discretion to and I have to suggest that is there any way that this evidence would come in I guess I'm having a trouble why the gambling evidence doesn't come in to prove that the representations were not a mistake or an accident well if we're just talking about gambling evidence without looking at the specific pieces of evidence that were entered by the government in this case it might have some marginal relevance to the question of whether or not mr. Alivio knew he had income that that that might have some marginal relevance but we also have to look at whether or not the prejudicial impact of that evidence overcame the probative value of that evidence and I think the answer to that is clear well the tax preparer testified yes the tax preparer testified her name was miss Limon right and she she was testifying as to whether or not didn't she interesting I the government asked her a series of questions they said to her what are the standard questions that you ask clients when they come in the door and she says I asked them about their income I asked them about jury duty and then the government asked do you ask about gambling activity and she says no I don't specifically always ask about that so in the government's direct testimony of this witness she never established that she always asks she does ask about sources of income but when asked that question specifically by the government did you ask is this part of your standard questions do you specifically ask about gambling activity she said no it's not proper follow-up to ask if he revealed any gambling activity I well I think that it questions relevance if she doesn't ask that question in the first place wait a questionnaire for my tax preparation list your sources of income I write so I don't put down gambling and so if it's not proper to ask her that do you specifically ask the leading question about gambling what's what's wrong with then asking did he did he voluntarily tell you on in response to a sources of that he made anything from gambling well I guess if we're asking specific what she specifically asked mr. Olivia and you're asking whether or not it's proper for debt for them to ask her that question whether or not I'm sorry let's stay with her the tax preparer I've got the tax preparer on the stand and I would have two questions one did you ask him to did he volunteer the information about gambling either one would be to me a relevant question if you're dealing with somebody who is accused of non-reporting of income all sources of income if that you know I think that would be true if he had gambling income in this case he didn't have gambling income that was subject to tax tax liability how do you know that because it's the government's evidence but what he had the income you just offset it with losses right in that sense that's true you know I don't know how you try cases I understand you're trying to represent your client but to say that it is not relevant for the government to ask a witness who prepares his taxes what kind of information was disclosed either in response to a direct question by her or a general question which would have called for an honest statement of all sources of income her job is then to figure out whether he pays taxes on that income correct the way that's framed that's true your honor yes okay that's what I thought now but when we talk about the follow-up question to that your honor it wasn't did he have receipts from gambling it was did he tell you that he was a gambler it was calling after that your honor that wasn't the focus of that inquiry and that's why I asked at the outset I wish is your position that the fact that he gambled none of that should be before the jury and you have an absolutist position on that if it if gambling was legitimately going to be mentioned and it's fact that he did some gambling then the whole analysis of prejudice differs you're you know if if it's a secret that he gambled then the fact that it came out at all would be one level of prejudice if the fact that he gambled was relevant in some respect then the question is as you're now arguing that well it's how it got characterized how it got emphasized and that's what I'm focus on and I'd like to focus on the second prompt and use your time so we'll give 30 seconds to focus on exactly where no I'd like to know does that where is the abuse here if we assume that it was relevant for some purpose if you assume that it was relevant for some purpose and that purpose being that income from gambling is reportable regardless of whether it's offset from the losses and in this case they were eclipsed by the losses what happened here is the government took it too far okay the government took it too far they they used 50% of their their witnesses to discuss the gambling activity they brought in the debt collector from the Venetian to talk about a gambling debt that he didn't resolve they talked to they elicited testimony from her that when she called him this was after notices had been sent to him about this unpaid gambling debt a lot of time was spent on this and then when the government had the opportunity to argue its case during its closing argument they use that evidence in inappropriate ways gaming at the Venetian using metaphors about losing at the tables but in jackpot with their businesses as well as an overall emphasis on how he was irresponsible in paying that unpaid gambling debt and that had no relevance in the context of this tax case good morning may it please the court I'm Darwin Thomas assistant United States attorney in Los Angeles appearing for the United States in this matter your here and that is whether the trial court abused its discretion in allowing into evidence some testimony that referenced the defendants gambling activities now there is a slightly different issue with respect to the closing argument but I believe that that issue is simply derivative of the admission into evidence of the some of the gambling activities of the defendant and in many instances the defendant did not even object with respect to the specific questions or answers at the time of trial but we have treated the standard review review as being abuse of discretion in any event first it should be noted that the references in the record to gambit the defendants gambling activities is really quite limited previously opposing counsel was discussing the references with respect to the return preparer mrs. Lima and she was asked whether she asked her clients whether they had gambling income or other types of income and she was then asked as your honor pointed out whether the defendant really relayed to her gave her any information about his gambling income or losses in about 100 pages of testimony in the transcript those are the only two references with respect to miss Lima any gambling activities so the fact is that the references to the gambling in the record are really quite limited what about let's go over to miss wheelock miss wheelock that seemed to be more of a reach well miss wheelock was a very important witness for the exact testimony that she gave she didn't really talk about mr. Alivio's gambling activities in terms of what he did or his losses the three things that she four things that she testified to was one that he did have gambling winnings $34,000 on one day now the record doesn't reflect what his gambling losses might have been to offset his winnings but it was reportable income that he had gambling winnings he also transferred large amounts of the business's income and receipts to the casino for his personal account and that information is directly relevant to the issue of whether the defendant had income that he should have reported on his tax returns and failed to to show what a person does with the income that they have in taking it and using it for personal purposes it shows that it was income to the individual and it's relevant to proving that the tax returns were false the next thing that was derived from miss wheelock was the fact that when the defendant applied for extensions of credit with the casino he used as a reference as required by the casino a bank account reference which was the business's bank account so he was using the business's bank account the business's assets to fund his personal activities and to derive credit from the casino so it goes to showing his knowledge of the income and his use of the income for personal purposes I think that's where the court intervened at one point is that where isn't that where am I recalling correctly that the Q&A on that one began to in the courts do you get a little over the line that's yes I believe I understand what you're saying that the questioning then went somewhat beyond that one of the things that the defendant has objected to in the record was that miss wheelock was then asked to look at the bank account statement for the period of time when the defendant told her that he had no money that his business wasn't making any income now granted she had no knowledge of that particular item before in fact presumably miss wheelock didn't know that the defendant had been lying to her before but those bank records were in evidence it wasn't something that she was asked to make an opinion she simply was asked to state what the what the bank account references said but more I think the last thing with respect to miss wheelock's testimony is that she was told the defendant told the same lies to miss wheelock which is I stated maybe miss wheelock did not even know were lies until a certain point in time that he told to his return preparer miss Lehmann with respect to his financial wherewithal his businesses weren't making any income and his family had cut off his money supply which is totally false the that evidence was directly relevant to the willfulness of the defendant showing his knowledge and showing a common scheme that he used to it corroborated miss Lehmann's testimony that this is what the defendant was representing to her and the credibility of miss Lehmann the tax return preparer was the main thing that the defendant said right from the beginning right with opening statement you're going to have to decide whether she's a credible person so this information from miss wheelock although it concerns lying to a different person it is very corroborative of exactly what the defendant was telling miss Lehmann and it's a direct evidence of willfulness on his part the you know I will briefly address the arguments in in closing argument the the government believes there that the arguments were certainly fair use of the evidence that was admitted at trial the standard that needs to be applied at this court is whether there was clear error because there were no objections at the time and there I believe that that's quite clear that there's no clear error particularly because this wasn't something that the prosecutor just grabbed at to illustrate some bad character act of somebody who'd robbed a bank or something the evidence that he was reliant on was directly involved in the underlying case I believe that the instruction given by the judge during the course of the trial should be called a cautionary instruction as opposed to a curative instruction I don't think that there was any error made in fact I still the government's position is that if you go to Las Vegas and you gamble but that's a wholly legal activity and it's not it's not character evidence at all and the the focus of all the evidence that was introduced here regarding the defendant's gambling didn't have to do with his his gambling per se whether it was a good thing or a bad thing or whether he was a bad character it had to do with his financial transactions with the casino it had to do with the the transactions that he had with his creditors and the information that he gave to his creditors and as such we don't believe that 404 and B is really even implicated here so I think that the record is quite clear the the use of the gambling information in the prosecution was essentially necessary to prove the crimes that were charged and there really was no prejudice at all to the defendant from the fact that he was identified as a person who went to Las Vegas and gambled so if there are no questions from the panel I will thank you your honor the matter just argued it's just argued is submitted for decision
judges: Schroeder, Fisher, Smith N. R.